UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG, A RISK RETENTION GROUP,<br><br>Plaintiff,<br><br>v.<br><br>JKB HOMES NORCAL, INC.; JKB HOMES, CORPORATION; JKB DEVELOPMENT, INC.; and Does 1-20,<br><br>Defendants. | No. 1:15-CV-01381-TLN-BAM<br><br>**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Plaintiff ProBuilders Specialty Insurance Company, RRG's ("Plaintiff" or "ProBuilders") Motion for Partial Summary Judgment. (ECF No. 24.) Defendants JKB Homes NorCal, Inc.; JKB Homes, Corporation; and JKB Development, Inc. (collectively, "JKB"[1]) oppose the motion. (ECF No. 26.) For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment (ECF No. 24).

///
///
///
///

---

[1] For ease of reading, the Court will use "JKB" in the singular to refer to all Defendants collectively.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

ProBuilders is a Risk Retention Group chartered in the District of Columbia with its principal place of business in Denver, Colorado. (Def. Sep. Stm. Undisputed Facts, ECF No. 27, ¶ 1.) It specializes in providing coverage for "hard to place" risks. (ECF No. 27 ¶ 2.) To obtain a ProBuilders' insurance policy, a general contractor purchases shares of ProBuilders under a Subscription and Shareholder Agreement. (ECF No. 27 ¶ 4.) JKB is made up of general contractors and real estate developers who continuously purchased insurance policies from ProBuilders from 2002 to 2010. (ECF No. 24 at 6.)

This case stems from five separate construction defect cases, all of which—according to JKB—required ProBuilders to tender a defense to JKB pursuant to the insurance policies that JKB purchased from ProBuilders beginning in 2002. (ECF No. 27 ¶¶ 6–27.)[2] The five lawsuits are comprised of at least 200 individual homeowners who each alleged construction defect claims against JKB. (ECF No. 27 ¶ 5.) Three of the five lawsuits have now settled, while the remaining two—as of the filing of the present motion—are still being litigated. (ECF No. 24 at 2–3; ECF No. 27 ¶¶ 10, 14, 18, 22, 26.)

In each of the five underlying construction defect cases, ProBuilders tendered a defense on behalf of JKB. (ECF No. 27 ¶ 6.) Each claim was allotted an equal share of defense because "each policy would defend in full." (ECF No. 25 ¶ 17.) The Per Claim Deductible provision of each relevant policy required the insured to pay the deductible amount to ProBuilders within ten days of request. (ECF No. 27 ¶ 35.) Under the policy, if payment is not received, the policy is void. (ECF No. 27 ¶ 35.) The total deductible amount owed by JKB was determined by multiplying the number of claimants/homes by the per claim deductible. (ECF No. 25 ¶ 17.) Upon accepting to tender a defense, ProBuilders sent requests to JKB requesting payment of the deductibles under this provision. (ECF No. 27 ¶ 38.) Despite these requests, JKB has not paid any deductibles. (ECF No. 24 at 7.) By way of the present action, ProBuilders asks the Court to declare the relevant policies void due to JKB's nonpayment. It additionally seeks reimbursement

---

[2] Defendant disputes only the involvement of JKB Development, Inc., but does not assert or explain how that distinction is relevant to the present motion.

2

for any and all costs ProBuilders has tendered toward the defense of each of the five underlying lawsuits. (ECF No. 24 at 7–8.)

As it is relevant to the present Motion, the parties dispute the meaning of the term "claim" in the Per Claim Deductible Endorsement ("Per Claim Deductible") provision in Plaintiff's insurance policy. (ECF No. 24 at 7.) The Per Claim Deductible provision provides, in relevant part:

> PER CLAIM DEDUCTIBLE
> IT IS AGREED THAT $10,000/15,000/20,000/50,000 SHALL BE DEDUCTED FROM EACH AND EVERY CLAIM UNDER THIS POLICY, IRRESPECTIVE OF THE NUMBER OF CLAIMS WHICH MAY BE JOINED IN ANY ONE SUIT . . . SUBJECT TO THE FOLLOWING CONDITIONS:
> 3. THE NAMED INSURED SHALL CONTRIBUTE THE AMOUNT OF THE DEDUCTIBLE(S) WITHIN TEN (10) DAYS FROM THE DATE OF REQUEST BY US OR OUR REPRESENTATIVE. . . FAILURE OF THE NAMED INSURED TO PAY THE AMOUNT OF THE DEDUCTIBLE(S) WITHIN TEN (10) DAYS AS HEREIN SET FORTH SHALL VOID THE POLICY WITH RESPECT TO THE CLAIM(S) INVOLVED

(ECF No. 27 ¶ 35.) The policies separately define the terms "claim" and "suit." (ECF No. 24, at 8.) Under the policies:

> Claim means a request or demand for money or services because of bodily injury, property damage, personal injury or advertising injury, received by us or an insured including the service of suit or institution of arbitration proceedings against an insured. Claim does not include reports or accidents, acts, errors, occurrences, offenses or omissions which may give rise to a claim under this policy.

(ECF No. 27 ¶ 36.) The policies define suit as a "civil proceeding in which damage because of bodily injury, property damage, personal injury or advertising injury, to which the insurance applies are alleged." (ECF No. 24 at 8.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary

judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

ProBuilders moves the Court for partial summary judgment on two questions of contract interpretation regarding its insurance policies. (ECF No. 28 at 2.) First, ProBuilders argues the term "claim" as defined in the policy and used within the Per Claim Deductible provision is unambiguous and applies to each individual homeowner claimant. (ECF No. 24 at 2.) Second, because JKB failed to pay the deductible based on the number of homeowner claimants, ProBuilders asserts the policies are void and provide no coverage for the underlying legal actions against JKB. (ECF No. 24 at 1–2.)

For its part, JKB does not dispute that the language of the Per Claim Deductible requires the insured to pay a deductible on each claim "irrespective of the number of claims which may be joined in any one suit." (ECF No. 27 ¶ 35.) JKB does not dispute that ProBuilders tendered a defense in the underlying lawsuits under the insurance policies, nor that JKB has not made any payment to ProBuilders despite multiple requests for payment of the deductibles. (ECF No. 27 ¶ 38; ECF No. 26 at 2.) Instead, JKB argues that because ProBuilders did not invoice JKB separately for each homeowner claimant and did not separately allocate defense costs, it cannot assert that the terms of the policies demand a deductible on a per claim basis. (ECF No. 26 at 2,

8–12.)

Under California law as applied here, courts "generally resolve ambiguities in favor of coverage." *Evanston Ins. Co. v. N. Am. Capacity Ins. Co.*, No. 1:13-cv-01364-AWI-SAB, 2014 WL 3362258, at *3 (E.D. Cal. July 8, 2014) [hereinafter *Evanston*] (*citing AIU Ins. Co. v. Superior Ct. of Santa Clara Cty.*, 51 Cal.3d 807, 822 (1990)). "Whether a contract provision is ambiguous is a question of law." *Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1109 (E.D. Cal. 2006). A party may present extrinsic evidence to show that a facially unambiguous contract is reasonably susceptible to another interpretation. *Id*; *see Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 963 (E.D. Cal. 2016). If the contract is not reasonably susceptible to the contrary interpretation, the inquiry ends there. *Lennar Mare Island*, 176 F. Supp. 3d at 963. "If a contract provision is ambiguous, summary judgment is generally improper because differing views of the intent of parties will raise genuine issues of material fact." *Meridian Project Systems*, 426 F. Supp. 2d at 1109 (internal quotation omitted).

The Ninth Circuit has provided a three-step process to analyze insurance contracts and give "effect to the mutual intent of the parties." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925 (9th Cir. 2000) (*citing AIU Ins. Co.*, 51 Cal.3d at 821). First, the Court must examine the "'clear and explicit' meaning of the terms as used in their 'ordinary and popular sense.'" *Id.* The Court does not look at the terms out of context, but rather the term in the contract must be "construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract." *Id.* (*citing Bank of the West v. Superior Ct. of Contra Costa Cty.*, 2 Cal.4th 1254, 1265 (1992)). When the term is not ambiguous, extrinsic evidence may "not be relied upon to alter or add to the terms of the writing." *Lennar Mare Island*, 176 F. Supp. 3d at 962 (*citing Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal.4th 1169, 1174 (2013)). "If (and only if) a term is found to be ambiguous, . . . [the Court] resolves the ambiguities 'by looking to the expectations of a reasonable insured.'" *In re K F Dairies, Inc. & Affiliates*, 224 F.3d at 926 (*citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 875 (1993)). Finally, if the ambiguity remains, the Court construes the term

"against the party who caused the ambiguity to exist." *Id.* (*citing AIU Ins. Co.*, 51 Cal.3d at 822). "In the insurance context, this is almost always the insurer . . . ." *Id.*

ProBuilders has moved for summary judgment based on the argument that the term "claim" as used in the Per Claim Deductible provision is not ambiguous and unambiguously refers to each individual homeowner claimant. (ECF No. 24 at 10.) Using the Ninth Circuit's test, the Court must first look to the "clear and explicit meaning" of the term "claim" as used in its "ordinary and popular sense." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d at 925 *(citing AIU Ins. Co.*, 51 Cal.3d at 822). The Court finds *Evanston* instructive in this context. No. 1:13-cv-01365-AWI-SAB, 2014 WL 3362258. There, under strikingly similar facts,[3] the court used the Ninth Circuit's test and held the term "claim" was not ambiguous. As a result, the court was not required to move beyond the first prong of the three-part test articulated above, noting that "if contractual language is clear and explicit, it governs." *Id.* at *4 (*citing Kohlhase v. Safeco Ins. Co. of Am.*, 484 F. App'x 106, 107 (9th Cir. 2012)).

Likewise, the Court finds the language of the contract here is not ambiguous. In fact, the language in the ProBuilders policy mirrors the language used in the *Evanston* insurance policy. More specifically, ProBuilders' insurance policy states, in relevant part, "[i]t is agreed that [a certain dollar amount][4] shall be deducted from each and every claim under this policy, irrespective of the number of claims which may be joined in any one suit." (ECF No. 24-4 ¶ 35.) Using nearly identical language, the *Evanston* policy stated that the "retained limit for each and every claim . . . shall be: $10,000 regardless of the number of claims from a single occurrence, suits brought or the number of claims incorporated into one such suit." *Evanston*, 2014 WL 3362258, at *4. In both cases, the insurance policies provide separate definitions for "claim" and "suit." (ECF No. 24 at 8); *see also Evanston*, 2014 WL 3362258, at *5. ProBuilders' policy defines a "claim" as "a request of demand for money or services because of bodily injury,

---

[3] In *Evanston*, the insured was a construction and development company that held insurance policies with both Evanston and the defendant, North American Capacity Insurance Company. *Id.* at *1. To trigger the defendant's duty to defend, the policy required the insured to pay a deductible, and when the insured failed to pay the money on a per-claim basis, the defendant refused to tender a defense until the amount was satisfied. *Id.* at *2.

[4] Each policy has a different deductible amount, ranging from $10,000 to $50,000.

7

property damage, personal injury or advertising injury, received by us or an insured including the service of suit or institution of arbitration proceedings against an insured." (ECF No. 24 at 8.) "Suit" is defined as "a civil proceeding in which damage because of bodily injury, property damage, personal injury or advertising injury, to which this insurance applies are alleged." (ECF No. 24 at 8.) Interpreting the language in the context of the policy as a whole, as it must, the Court finds the distinction between the two terms significant. More specifically, the policy's distinction between a "claim" and a "suit" would be moot if "claims that could have been brought separately were subject to only a single [deductible] when brought together." *Evanston*, 2014 WL 3362258, at *5 (finding the plaintiff could not have reasonably believed the $10,000 retention "applied only a single time to an entire suit without regard to the number of claims it contained").

In examining the entire policy, the juxtaposition of the two terms leads the Court to find the term "claim" as used in the Per Claim Deductible refers to each individual homeowner claimant, not to each of the five suits filed. If the homeowners chose to bring their construction defect claims against JKB individually rather than as a group, JKB would owe a deductible to ProBuilders for each homeowner claimant. A contrary outcome is simply nonsensical.

Indeed, JKB does not dispute the language or definitions used within the policy, nor does it argue that the language or definitions are ambiguous. (ECF No. 27 ¶ 35.) Instead, JKB points to the billing practices of ProBuilders, presumably as evidence that because ProBuilders did not separately account for or bill on a per-person, per-claim basis, it is precluded from demanding that the deductible be paid on a per-person, per-claim basis.[5] (ECF No. 26 at 10.) But JKB does not explain how this argument impacts the Court's analysis of the meaning of the term "claim," or how it should influence the Court's determination of the declaratory relief requested.

To the extent JKB asserts that ProBuilders' billing practices reveal an ambiguity in the contract, JKB's argument is unavailing. The Court finds this evidence does not reasonably lend the terms of the contract to the interpretation JKB urges. Because the language in the contract is

---

[5] It is not clear to the Court that this is JKB's intended argument. But, as ProBuilders points out in reply, there is no evidence that ProBuilders was required to separately invoice JKB, nor can the Court fathom a context in which JKB's argument is otherwise relevant to the pending Motion.

8

clear and the term "claim" is unambiguous, the Court will not consider the extrinsic evidence of ProBuilders' billing practices to alter the meaning of the contract. *See Lennar Mare Island, LLC*, 176 F. Supp. 3d at 962 (providing that "[w]here the term is not ambiguous, extrinsic evidence may "not be relied upon to alter or add to the terms of the writing") (*citing Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal.4th 1169, 1174 (2013)). Because the Court finds the term "claim" to be unambiguous, JKB has failed to establish that there is a genuine dispute of material fact preventing summary judgment on the issue. The Court finds the deductible unambiguously applies on a per-claimant/per-home basis.

As for ProBuilders' second request, it follows that because JKB failed to pay the deductible required under its policy—a fact JKB does not dispute—the policy is void. JKB argues only that the appropriate recourse would be for ProBuilders to seek a money judgment, not to void the policy. (ECF No. 26 at 15.) JKB offers no authority for its position, and ProBuilders' request is therefore granted.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS ProBuilders' Motion for Partial Summary Judgment (ECF No. 24). The parties are ordered to file a joint status report not later than fourteen (14) days from the electronic filing of this order indicating how this matter will proceed.

IT IS SO ORDERED.

Dated: October 1, 2019

_____
Troy L. Nunley
United States District Judge